McCrum v. Hildebrand.

---

No. 9827.

## McCRUM v. HILDEBRAND.

MARRIAGE PROMISE,—*Instruction.*—*Duress.*—In a suit for breach of a marriage promise, an instruction which correctly states the facts necessary to be proven by the plaintiff, professing to do no more, is not erroneous for failure to inform the jury further that the promise would not bind the defendant if made under duress.

SAME.—*Evidence of Contract.*—An instruction in such case, which submits to the jury the conduct of the parties towards each other, as proper evidence to be considered in determining whether a promise of marriage existed, is proper; indeed, the jury may be told that a promise may be inferred from circumstances.

SAME.—A promise of marriage, freely made, is not nullified by another made under duress.

From the Huntington Circuit Court.

*J. C. Branyan, C. W. Watkins, M. L. Spencer, B. M. Cobb* and *G. W. Stultz,* for appellant.

ELLIOTT, J.—This action was brought by the appellee against the appellant, to recover damages for the breach of a promise of marriage.

The first instruction given by the court reads thus:

"1st. In order to entitle the plaintiff, Elizabeth Hildebrand, to recover in this case, it is necessary that it shall be made to appear to your satisfaction, by the preponderance of the evidence, that, at some time before the commencement of this action, the defendant, Robert C. McCrum, promised to marry her, in consideration of a like promise by the plaintiff to the defendant to marry him; that the plaintiff thereafter either requested the defendant, within a reasonable time, and before the commencement of this action, to marry her, the plaintiff, in pursuance of such contract, and he refused to do so; or that, by the terms of the contract, a day certain beyond the time of the commencement of this action was fixed for the performance of such marriage contract without performance, or offer of performance, of the same by the defendant, on or before the day so fixed, and that the plaintiff at all times from and after the making of such contract or contracts, up to the time of the commencement of this action, was ready and willing to marry the defendant."

The objection made to this instruction is, to quote the language of counsel, " That it purports to set out the only things necessary to entitle plaintiff to recover, and omits to state that if the agreement, fixing the time, was under duress, it would be fatal to the appellee's right to sue." There is no force in the objection. The appellee was not bound to prove, in the first instance, that the promise was not made under duress, for she was under no obligation to anticipate and disprove a matter of defence.

The fifth instruction is as follows:

" 5th. In this case circumstantial, as well as positive proof, is competent for the purpose of making out, not only the case of the plaintiff, but any defence of the defendant, embraced within the issues as well. Hence, not only the direct statements of witnesses pro or con, that is, for or against, as to the making of any positive or actual promises, are proper to be considered, but the facts and circumstances before you in the

proof touching the relations which existed between the parties during the period anterior to the time or times at which it is alleged the promise or contract of marriage was made, may also be weighed, as well for the purpose of determining, on the one hand, whether any such contract or promise was made, as, on the other, for the purpose of determining whether the plaintiff released the defendant therefrom, or was herself not ready or unwilling to perform the contract, if any existed. Had they then, during the period referred to, any acquaintance with each other? If so, what was the character, that of ordinary acquaintances or friends only, or of a closer or more tender and endearing character? Were the attentions of the defendant to the plaintiff, if any there were, of such character as to justify the construction that they manifested an intention on the part of the defendant to make overtures of affection and love to the plaintiff, and solicit a reciprocal manifestation thereof on the part of the plaintiff toward the defendant? Were such attentions, if any, with the knowledge of defendant, so understood by the plaintiff, and did she or not so deport herself as to be understood by the defendant as so interpreting and accepting his attentions and reciprocating his sentiments? All these and other similar enquiries fairly arising upon and growing out of the circumstances in evidence, will be properly matters entitled to be considered in determining whether a promise or contract of marriage was made, and you are not required to look only to the statements of witnesses, as to the express promises or contracts being or not being made. So, also, for the purpose of determining whether the plaintiff on her part had promised to marry the defendant, and as to whether, if there were such mutual contract, the plaintiff had released the defendant from it, or was not ready or unwilling to perform it, you may, in like manner, consider the relations, bearing, extent of social intercourse of the plaintiff with other persons of his sex other than the defendant. If, in fact, she was, during the period of the al-

McCrum *v.* Hildebrand.

leged betrothal, receiving and accepting the attentions of another or others than the defendant as suitor or suitors, that might be a potent circumstance in determining the question whether she regarded herself at the time of receiving such attentions as being affianced to the defendant. If the relations with others, however, were only those of casual acquaintance and ordinary friendly intercourse, it will be for you, then, to consider whether such relations should militate against the claim of being under an engagement to the defendant."

The objections stated to this charge are, that "it assumes to tell the jury that the appellant would be bound if he understood that appellee was interpreting his relations with her as serious on his part, and in telling the jury that they were not required to look only to the statements of the witnesses as to express promises or contracts being or not being made."

We do not understand the instruction as making such an assumption as counsel assert, for we understand it as submitting for the consideration of the jury the conduct of the parties, and this was proper. In actions of this kind it is always proper to submit to the jury the conduct of the parties as tending to prove that the defendant had made a promise of marriage to the plaintiff.

If, however, the instruction had told the jury that the promise might have been inferred from circumstances, it would not have been erroneous. A late writer says: "From the very nature of this contract it results, that it may be proved by facts and circumstances." 2 Hilliard Con. 117. Chitty lays down a like rule, and the American editor has cited many authorities supporting and illustrating the text. 2 Chitty Con. (11 Am. ed.) 790, n.

The court did right, and this it seems almost needless to say, in directing the jury that they were not to look alone to the positive testimony of witnesses for proof of the promise to marry.

The eighth instruction reads thus:

"8th. If the only promise which the defendant may be shown to have made, either expressly or as being fairly deducible from the circumstances, was one induced by threats and putting in fear of serious bodily harm, he would not be bound by such promise; but though there may have been one such promise so obtained, if there were another or others voluntarily made expressly, or such other promise is fairly deducible from the facts and circumstances in evidence, and there was a mutual promise on the part of the plaintiff, then the defendant would be liable in case of refusal to perform the latter contract so by him made."

This instruction is unobjectionable. If promises had been freely made, their effect would not be nullified by the fact that another was made under duress.

If, prior to the one which the evidence tends to show the angry father and brother obtained by threats, the appellant had, when free from restraint and fear, made other promises to the appellee, they would not be rendered nugatory by the fact that a subsequent promise was obtained by putting him under duress.

The appellant's counsel "admit," to quote from their brief, "that there is evidence enough in the record to find that there was a promise of marriage independent of any made at the meeting of January 13th," and this sufficiently proves the relevancy of the instruction, as the only evidence tending to show duress is confined to the day named.

We can not disturb the verdict, as there is evidence tending to show both a promise and a breach.

Judgment affirmed.